OPINION OF THE COURT
Harold J. Hughes, J.
Plaintiff moves to enjoin the defendants from invading the principal of defendant Woodlawn Cemetery’s (Woodlawn) "permanent maintenance trust fund” and invading the principal of its "perpetual care trust fund” and borrowing money from its "perpetual care income fund” and otherwise directing the preservation and protection of Woodlawn’s assets pending a determination of this action. Defendants have cross-moved pursuant to CPLR 3211 (a) (3), (5), (7); (c) and 3212 for dismissal or summary judgment.
 The court has considered defendants’ motion and finds that the Attorney-General has legal capacity to commence an action to preserve Woodlawn’s assets or to seek injunctive relief to restrain defendants "from carrying on unauthorized activities” (Not-For-Profit Corporation Law § 112 [a] [1]). The court must also decline defendants’ invitation to transmogrify the doctrine of administrative exhaustion so that it bars agencies from commencing enforcement proceedings until they have followed every possible administrative procedure and issued final *848 determinations. The doctrine arises from CPLR 7801’s provision that article 78 proceedings "shall not be used to challenge a determination * * * 1. which is not final”. The Cemetery Board or Attorney-General is not challenging agency determinations and they are, therefore, not bound to exhaust all of their own procedures prior to commencing actions to quell wrongdoing by entities they oversee. Finally, defendants are not entitled to summary judgment since factual issues have been presented precluding such relief. Accordingly, defendants’ cross motion to dismiss or for summary judgment must be denied.
The test for preliminary injunctions is whether the moving party has demonstrated (1) the likelihood of ultimate success on the merits, (2) irreparable injury absent the granting of the preliminary injunction, and (3) that the equities balance in favor of granting the injunction (Aetna Ins. Co. v Capasso, 75 NY2d 860, 862). In assessing the likelihood of plaintiff’s ultimate success, the court must consider defendants’ claim that Not-For-Profit Corporation Law § 513 (c) permits their treating Woodlawn’s "permanent maintenance trust fund” and "perpetual care trust fund” and "perpetual care income fund” as endowment funds and withdrawing principal from those funds to the extent that there has been capital appreciation. Defendants have presented considerable evidence to demonstrate that their investment strategy has permitted them to meet the current financial requirements of operating Wood-lawn, while substantially increasing the value of the securities held by Woodlawn.
Defendants urge that it would be imprudent for them not to use the statutory approach set forth in Not-For-Profit Corporation Law § 513 and that, if they are permitted to invest their funds for long-term growth and use some of the capital appreciation, Woodlawn can continue to maintain itself indefinitely. Defendants warn that if they are prohibited from using some of the capital appreciation, they will not be able to maintain the cemetery and husband its resources in the long term. In addition, the Cemetery Board has been aware of and permitted Woodlawn’s actions for several years pending administrative consideration.
Plaintiff urges that defendants may not treat the funds as endowment funds pursuant to Not-For-Profit Corporation Law § 513 (c) because that section does not apply to trust funds such as Woodlawn’s "permanent maintenance trust fund”, "perpetual care trust fund” and "perpetual income fund”. The *849 permanent maintenance fund is created from monies required to be set aside by Not-For-Profit Corporation Law § 1507 (a). By statute, the income generated from this fund must be used for the maintenance and preservation of the cemetery grounds. The principal of this fund is inviolate, except where application is made to the Supreme Court and the court approves the withdrawal of principal from the fund (Not-For-Profit Corporation Law § 1507 [a] [2]). A perpetual care fund is established to hold monies deposited by purchasers of cemetery plots who have deposited extra sums of money with the cemetery in trust for the purpose of maintaining their own plot pursuant to Not-For-Profit Corporation Law § 1507 (c) (1). Defendants are required to keep these monies separate and apart from all other funds and property and must hold these funds as trust funds (Not-For-Profit Corporation Law § 1507 [c]). The statute makes no provision for invading the perpetual care fund’s principal, even though it does provide for saving unused income for use in years when costs outstrip the income generated by the fund.
Against this backdrop, the court must determine whether Not-For-Profit Corporation Law § 513 overrides the Not-For-Profit Corporation Law § 1507 restrictions on invading principal. The task is simplified by Not-For-Profit Corporation Law § 103 (c), which, when applied to this case, provides that where there is inconsistency, Not-For-Profit Corporation Law § 513 is inapplicable (Matter of Vestal Hills Mem. Park Assn., Sup Ct, Broome County, Monserrate, J.). Except after application to the Supreme Court and subject to judicial approval pursuant to Not-For-Profit Corporation Law § 1507 (a), defendants cannot justify invading the principal.
Plaintiff also challenges defendants’ "borrowing” money from Woodlawn’s perpetual care income fund by the general care fund and then using the money for general expenses. Although this borrowing has been forthrightly reflected in the defendants’ books, it too is necessitated by insufficient income from defendants’ investments and sales to meet operating expenses. As repayment of the loans will be impossible until fundamental changes are made to increase defendants’ income stream to the point where it meets expenses, the court concludes that the defendants’ routine borrowing is another extra-statutory means of removing monies from the funds without applying to the Supreme Court.
The second part of the test for preliminary injunction is whether there will be irreparable harm if a preliminary injunc *850 tion is not granted. Issuance of a preliminary injunction prohibiting further unauthorized invasion of Woodlawn’s trust funds’ principal is necessary if the continued flow of funds is to be stanched. Given the statutory prohibition on invasions of the funds and the defendants’ present inability to pay current expenses, much less reimburse the funds for monies borrowed or principal removed, it is clear that there will be continued invasion and arguably irreparable harm if an injunction is not issued.
The third part of the test, the balancing of the equities, also favors issuance of a preliminary injunction. Despite defendants’ prediction of dire consequences, the harm Woodlawn will suffer as a result of the injunction will last only as long as it takes for defendants to come into compliance with the statutory requirements. Defendants may now avoid further liability by promptly applying to the Supreme Court for permission to withdraw principal (Not-For-Profit Corporation Law § 1507 [a]) or by modifying the circumstances that require greater income than the trust funds and outside sources of income generate.
Plaintiff has met all three prongs of the test for a preliminary injunction, and the court grants the preliminary injunction barring the defendants from invading the principal of Woodlawn’s permanent maintenance trust fund or invading the principal of the perpetual care trust fund or borrowing money from the perpetual care income fund, without prejudice to defendants applying to the Supreme Court as provided by Not-For-Profit Corporation Law § 1507 (a).
In granting the prospective relief, the court does not decide whether amounts previously removed from Woodlawn’s funds should be replaced or, if so, how and when. Impulsive action is contraindicated by the defendants’ and the Cemetery Board’s past administrative interaction, the complexity of Woodlawn’s finances, and the potential for precipitating an unnecessary financial crisis if the wrong approach is adopted. It behooves all parties and the Cemetery Board now to engage in a pragmatic process that will ensure the continuing viability of the Woodlawn Cemetery as well as compliance with the statutory requirements. Fortunately, as a result of the rise in the value of Woodlawn’s assets, it appears that Woodlawn has sufficient funds to be self-sufficient if wisely managed and supervised.